IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:09-CV-00439-FL

ROBERT PAUL MORRIS,

               Plaintiff,

v.

SCENERA RESEARCH LLC &
RYAN C. FRY,

               Defendants.

**<u>DEFENDANTS' AMENDED ANSWER
AND COUNTERCLAIMS</u>**

Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, Defendants Scenera

Research LLC and Ryan C. Fry hereby file this Amended Answer and Counterclaims in response

to the Complaint filed by Plaintiff Robert Paul Morris, stating and alleging as follows:

## <u>ANSWER</u>

For their Answer to the Complaint filed by Robert Paul Morris ("Morris"), Defendants

Scenera Research LLC and Ryan C. Fry ("Defendants") respond as follows:

## <u>FIRST DEFENSE</u>

The Complaint fails to state a claim upon which relief can be granted.

## <u>SECOND DEFENSE</u>

In response to the specific allegations of the Complaint, Defendants state as follows:

### PARTIES AND JURISDICTION

1.     Upon information and belief, Defendants admit the allegations of Paragraph 1 of

the Complaint.

2.      Defendants admit that Scenera Research LLC ("Scenera") is a Delaware limited liability company and that it has an office at 111 Corning Rd, Suite 220, Cary, North Carolina 27518.  Except as specifically admitted, Defendants deny the allegations of Paragraph 2 of the Complaint.

3.      Defendants admit that Defendant Ryan C. Fry is the Chief Executive Officer of Scenera Research LLC and is a resident of New Hampshire.  Except as specifically admitted, Defendants deny the allegations of Paragraph 3 of the Complaint.

4.      The allegations of Paragraph 4 state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 4 of the Complaint.

5.      Defendants admit the allegations of Paragraph 5 of the Complaint.

**FACTS**

6.      Defendants admit that Mr. Morris is an inventor.  Except as specifically admitted, Defendants deny the allegations of Paragraph 6 of the Complaint.

7.      Defendants admit that in 1998 Mr. Morris commenced his employment with FlashPoint Technology, Inc.  Except as specifically admitted, Defendants deny the allegations of Paragraph 7 of the Complaint.

8.      Defendants admit that in late 2003 Mr. Morris was offered a position of employment with IPAC, LLC, which is now known as Scenera Research LLC.  Defendants deny that Mr. Morris was hired to "perform analysis on and manage IPAC's patent portfolio."  Except as admitted, Defendants deny the remaining allegations of Paragraph 8 of the Complaint.

US2008 971753.1

9.      Defendants admit that on or about January 1, 2004, Mr. Morris commenced his employment with IPAC, LLC.  Except as specifically admitted, Defendants deny the allegations of Paragraph 9 of the Complaint.

10.     Defendants admit that Mr. Morris did not sign an employment agreement or anti-competition agreement with IPAC, LLC.  Except as specifically admitted, Defendants deny the allegations of Paragraph 10 of the Complaint.

11.     Defendants deny the allegations of Paragraph 11 of the Complaint.

12.     Defendants deny the allegations of Paragraph 12 of the Complaint.

13.     Defendants admit that, after Mr. Morris commenced his employment with IPAC, LLC in 2004, the company began to pay bonuses to inventors, including Mr. Morris, as an added incentive for inventors to develop inventions and obtain patents on them.  Defendants admit that, from time to time, inventors were paid $5,000 at the time a patent application was filed and $5,000 at the time the patent issued.  Defendants admit that, in addition to his annual base salary, Mr. Morris from time to time received bonuses for patents that were successfully applied for and/or issued.  Except as specifically admitted, Defendants deny the allegations of Paragraph 13 of the Complaint.

14.     Defendants deny the allegations of Paragraph 14 of the Complaint.

15.     Defendants admit that in 2004 Defendant Fry became the president of IPAC, LLC, and that he later became the CEO and manager of IPAC, LLC.  Defendants admit that Mr. Fry is the son of Stanley Fry.  Except as specifically admitted, Defendants deny the allegations of Paragraph 15 of the Complaint.

US2008 971753.1

16.     Defendants admit that IPAC, LLC changed its name to Scenera Research LLC in 2006.  Except as specifically admitted, Defendants deny the allegations of Paragraph 16 of the Complaint.

17.     Defendants deny the allegations of Paragraph 17 of the Complaint.

18.     Defendants admit that, in addition to his annual base salary, between January 2004 and the end of 2007, Mr. Morris periodically received bonus payments, with $5,000 paid when a patent application naming him as an inventor was filed and $5,000 paid when the patent issued.  Except as specifically admitted, Defendants deny the allegations of Paragraph 18 of the Complaint.

19.     Defendants admit that, after IPAC, LLC became Scenera Research LLC in 2006, and through the end of 2007, Mr. Morris continued to receive periodic bonus payments as an inventor.  Except as specifically admitted, Defendants deny the allegations of Paragraph 19 of the Complaint.

20.     Defendants deny the allegations of Paragraph 20 of the Complaint.

21.     Defendants admit that, in addition to his annual base salary, between January 2004 and the end of 2007, Mr. Morris received bonus payments as an inventor.  Except as specifically admitted, Defendants deny the allegations of Paragraph 21 of the Complaint.

22.     Defendants admit that a meeting was held in or around December 18, 2007 between Defendant Fry, Mr. Morris, and Ali Schmidlein, Scenera's Controller.  Defendants deny that the meeting was a "performance evaluation."  Except as specifically admitted, Defendants deny the allegations of Paragraph 22 of the Complaint.

23.     Defendants admit that, during the December 2007 meeting, Defendant Fry expressed concern to Mr. Morris over the amount of "up front" bonuses that were being paid to

US2008 971753.1

inventors and researchers, including Mr. Morris, for patents that might or might not have value to the company. Defendants admit that, during this meeting, Mr. Morris proposed developing a new compensation and retention plan for all employees. Except as specifically admitted, Defendants deny the allegations of Paragraph 23 of the Complaint.

24.     Defendants deny the allegations of Paragraph 24 of the Complaint.

25.     Defendants deny the allegations of Paragraph 25 of the Complaint.

26.     Defendants deny the allegations of Paragraph 26 of the Complaint.

27.     Defendants admit the allegations of Paragraph 27 of the Complaint.

28.     Defendants deny the allegations of Paragraph 28 of the Complaint.

29.     Defendants deny the allegations of Paragraph 29 of the Complaint.

30.     Defendants deny the allegations of Paragraph 30 of the Complaint.

31.     Defendants deny the allegations of Paragraph 31 of the Complaint.

32.     Defendants deny the allegations of Paragraph 32 of the Complaint.

33.     Defendants deny the allegations of Paragraph 33 of the Complaint.

34.     Defendants admit that in or around July 2008, Mr. Morris and Defendant Fry had a meeting in Portsmouth, New Hampshire to discuss the company's compensation and retention plan. Except as specifically admitted, Defendants deny the allegations of Paragraph 34 of the Complaint.

35.     Defendants admit that Defendant Fry took Mr. Morris to dinner during his trip to Portsmouth, New Hampshire, and, upon information and belief, that this dinner occurred on July 16, 2008. Except as specifically admitted, Defendants deny the allegations of Paragraph 35 of the Complaint.

36.     Defendants deny the allegations of Paragraph 36 of the Complaint.

US2008 971753.1

37.     Defendants deny the allegations of Paragraph 37 of the Complaint.

38.     Defendants deny the allegations of Paragraph 38 of the Complaint.

39.     Defendants deny the allegations of Paragraph 39 of the Complaint.

40.     Defendants deny the allegations of Paragraph 40 of the Complaint.

41.     Defendants admit that Scenera did not provide Mr. Morris with a written employment agreement during the year 2008.  Except as specifically admitted, Defendants deny the allegations of Paragraph 41 of the Complaint.

42.     Defendants admit that, in early 2009, Mr. Morris requested that Scenera pay him bonuses for patent applications that had been filed or had issued after January 2008.  Except as specifically admitted, Defendants deny the allegations of Paragraph 42 of the Complaint.

43.     Defendants deny the allegations of Paragraph 43 of the Complaint.

44.     Defendants admit that, as of early 2009, there were a number of pending patent applications for inventions that Mr. Morris had developed and assigned to Scenera and which were still undergoing prosecution and had yet to issue.   Defendants lack information and knowledge sufficient to form a belief as to the number of patent applications that were still pending "in early 2009" and therefore deny same.  Except as specifically admitted, Defendants deny the allegations of Paragraph 44 of the Complaint.

45.     Defendants deny the allegations of Paragraph 45 of the Complaint.

46.     Defendants admit that, in March 2009, Mr. Morris requested that Scenera pay him bonuses for patent applications that had been filed or had issued after January 2008.  Except as specifically admitted, Defendants deny the allegations of Paragraph 46 of the Complaint.

47.     Defendants deny the allegations of Paragraph 47 of the Complaint.

6

48.     Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 48 of the Complaint, and therefore deny same.

49.     Defendants admit that, in or around April 2009, while still employed by Scenera, Mr. Morris instructed Defendants to communicate directly with his counsel in connection with the parties' dispute over patent bonuses. Except as specifically admitted, Defendants deny the allegations of Paragraph 49 of the Complaint.

50.     Defendants admit that Defendant Fry and Mr. Morris periodically communicated with each other in an attempt to resolve the parties' dispute over patent bonuses. Except as specifically admitted, Defendants deny the allegations of Paragraph 50 of the Complaint.

51.     Defendants admit that the May 13, 2009 Letter referenced in Paragraph 51 is the best evidence of its contents. To the extent the allegations of Paragraph 51 are inconsistent with the contents of the May 13, 2009 Letter, Defendants deny same. Defendants deny the remaining allegations of Paragraph 51 of the Complaint.

52.     Defendants admit that the draft agreement referenced in Paragraph 52 is the best evidence of its contents. To the extent the allegations of Paragraph 52 are inconsistent with the contents of that draft agreement, Defendants deny same. Defendants deny the remaining allegations of Paragraph 52 of the Complaint.

53.     Defendants admit that the draft agreement referenced in Paragraph 53 is the best evidence of its contents. To the extent the allegations of Paragraph 53 are inconsistent with the contents of that draft agreement, Defendants deny same. Defendants deny the remaining allegations of Paragraph 53 of the Complaint.

US2008 971753.1

54.     Defendants admit that Scenera would not agree to pay Mr. Morris bonuses for patent applications that had been filed or had issued after January 2008.  Except as specifically admitted, Defendants deny the allegations of Paragraph 54 of the Complaint.

55.     Defendants admit that Mr. Morris did not accept the proposed compensation structure and agreement that Defendants presented in June 2009.  Except as specifically admitted, Defendants deny the allegations of Paragraph 55 of the Complaint.

56.     Defendants deny the allegations of Paragraph 56 of the Complaint.

57.     Defendants admit that it remitted the sum of $210,000 to Mr. Morris in July 2009 in a good faith attempt to resolve the dispute between the parties.  Except as specifically admitted, Defendants deny the allegations of Paragraph 57 of the Complaint.

58.     Defendants admit that the July 13, 2009 Letter referenced in Paragraph 58 is the best evidence of its contents.  To the extent the allegations of Paragraph 58 are inconsistent with the contents of the July 13, 2009 Letter, Defendants deny same.  Defendants deny the remaining allegations of Paragraph 58 of the Complaint.

59.     Defendants deny the allegations of Paragraph 59 of the Complaint.

60.     Defendants deny the allegations of Paragraph 60 of the Complaint.

61.     Defendants deny the allegations of Paragraph 61 of the Complaint.

62.     Defendants deny the allegations of Paragraph 62 of the Complaint.

63.     Defendants deny the allegations of Paragraph 63 of the Complaint.

64.     Defendants admit that Mr. Morris resigned from his employment with Scenera in July 2009.  Defendants admit that Scenera is not required to pay Mr. Morris bonuses for patent applications or bonuses that were filed or issued after January 2008.  Except as specifically admitted, Defendants deny the allegations of Paragraph 64.

US2008 971753.1

## COUNT I
## North Carolina Wage and Hour Act
## Defendant Scenera and Defendant Fry

65. Defendants incorporate by reference Paragraphs 1 through 64 of this Answer as if they were fully set forth herein.

66. The allegations of Paragraph 66 state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 66 of the Complaint.

67. Defendants deny the allegations of Paragraph 67 of the Complaint.

68. Defendants deny the allegations of Paragraph 68 of the Complaint.

69. Defendants deny the allegations of Paragraph 69 of the Complaint.

70. Defendants deny the allegations of Paragraph 70 of the Complaint.

71. Defendants deny the allegations of Paragraph 71 of the Complaint.

72. Defendants deny the allegations of Paragraph 72 of the Complaint.

## COUNT II
## Retaliatory Employment Discrimination (REDA)

73. Defendants incorporate by reference Paragraphs 1 through 72 of this Answer as if they were fully set forth herein.

74. Defendants admit that the Employment Discrimination Complaint referenced in Paragraph 74 of the Complaint is the best evidence of its contents. To the extent the contents of the Employment Discrimination Complaint are inconsistent with the allegations of Paragraph 74, Defendants deny same. Defendants deny the remaining allegations of Paragraph 74 of the Complaint.

US2008 971753.1

## COUNT III
## Fraudulent Inducement
## Defendant Fry and Defendant Scenera

75.     Defendants incorporate by reference Paragraphs 1 through 74 of this Answer as if they were fully set forth herein.

76.     Defendants deny the allegations of Paragraph 76 of the Complaint.

77.     Defendants deny the allegations of Paragraph 77 of the Complaint.

78.     Defendants deny the allegations of Paragraph 78 of the Complaint.

79.     Defendants deny the allegations of Paragraph 79 of the Complaint.

80.     Defendants deny the allegations of Paragraph 80 of the Complaint.

81.     Defendants deny the allegations of Paragraph 81 of the Complaint.

82.     Defendants deny the allegations of Paragraph 82 of the Complaint.

83.     Defendants deny the allegations of Paragraph 83 of the Complaint.

84.     Defendants deny the allegations of Paragraph 84 of the Complaint.

85.     Defendants deny the allegations of Paragraph 85 of the Complaint.

86.     Defendants deny the allegations of Paragraph 86 of the Complaint.

## COUNT IV
## Unjust Enrichment
## Defendant Scenera

87.     Defendants incorporate by reference Paragraphs 1 through 86 of this Answer as if they were fully set forth herein.

88.     Defendants deny the allegations of Paragraph 88 of the Complaint.

89.     Defendants deny the allegations of Paragraph 89 of the Complaint.

90.     Defendants deny the allegations of Paragraph 90 of the Complaint.

91.     Defendants deny the allegations of Paragraph 91 of the Complaint.

US2008 971753.1

92.     Defendants deny the allegations of Paragraph 92 of the Complaint.

93.     Defendants deny the allegations of Paragraph 93 of the Complaint.

94.     Defendants deny the allegations of Paragraph 94 of the Complaint.

**COUNT V**
**Breach of Contract**
**Defendant Scenera**

95.     Defendants incorporate by reference Paragraphs 1 through 94 of this Answer as if they were fully set forth herein.

96.     Defendants deny the allegations of Paragraph 96 of the Complaint.

97.     Defendants deny the allegations of Paragraph 97 of the Complaint.

98.     Defendants deny the allegations of Paragraph 98 of the Complaint.

99.     Defendants deny the allegations of Paragraph 99 of the Complaint.

100.    Defendants deny the allegations of Paragraph 100 of the Complaint.

101.    Defendants deny the allegations of Paragraph 101 of the Complaint.

102.    Defendants deny the allegations of Paragraph 102 of the Complaint.

103.    Defendants deny the allegations of Paragraph 103 of the Complaint.

104.    Defendants deny the allegations of Paragraph 104 of the Complaint.

## THIRD DEFENSE

Some or all of Morris' claims against Defendants are barred because Morris was hired to invent and to devote his efforts to the particular task of developing inventions for Scenera.

## FOURTH DEFENSE

Morris' claim against Defendants for breach of contract is barred because Morris had a pre-existing legal duty to develop inventions for Scenera and to assign the patents in those inventions to Scenera.

US2008 971753.1

## FIFTH DEFENSE

Morris' claim against Defendants for unjust enrichment is barred because Morris cannot show any "enrichment" as a result of Scenera's filing patent applications that name Morris as an inventor and Morris' assigning patents in favor of Scenera, since Morris had a pre-existing legal duty to do so.

## SIXTH DEFENSE

Morris' claims against Defendants for fraudulent inducement and restitution are barred because Morris had a pre-existing legal duty to develop inventions for Scenera and to assign the patents in those inventions to Scenera, such that there was no reliance on the part of Morris.

## SEVENTH DEFENSE

Morris' claim against Defendants for retaliatory termination under N.C. Gen. Stat. § 95-241 is barred because Morris voluntarily resigned from his employment with Scenera.

## EIGHTH DEFENSE

Morris' claim against Defendants for retaliatory termination under N.C. Gen. Stat. § 95-241 is barred because Morris voluntarily resigned from his employment.  Morris' claim is also barred because, even assuming Morris was terminated from the company, which Defendants deny, Morris engaged in acts of disloyalty and self-dealing and acted in a manner contrary to the best interests of Scenera, his employer, such that his termination, had it occurred, would have been justified as a matter of law.

## NINTH DEFENSE

Some or all of Morris' claims against Defendants are barred by the doctrines of laches, waiver and/or estoppel.

US2008 971753.1

## TENTH DEFENSE

Some or all of Morris' claims against Defendants are subject to setoff, offset, and/or recoupment.

## ELEVENTH DEFENSE

Some or all of Morris' claims against Defendants are barred by the doctrine of unclean hands.

## TWELFTH DEFENSE

Morris' claim under the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.22, is barred because Scenera tendered to Morris all of the wages that had allegedly accrued up until the time Morris had notice that Scenera had ceased paying bonuses to inventors.

## THIRTEENTH DEFENSE

Morris' continued employment is hereby pled as a condition precedent to the purported obligation of Scenera, if any, to pay Morris any patent bonuses as an inventor.

## FOURTEENTH DEFENSE

Some or all of Morris' claims against Defendants for monetary damages are barred because Morris had a duty to mitigate his damages, and, upon information and belief, he failed to take steps to mitigate his damages.

13

## COUNTERCLAIMS

For its Counterclaims against Plaintiff Robert Paul Morris, Defendant-Counterclaimant Scenera Research LLC ("Scenera") states and alleges as follows:

## THE PARTIES, JURISDICTION AND VENUE

1.      Scenera is a limited liability company organized and existing under the laws of Delaware.  Scenera's sole member is IP Funding, LLC, which is a limited liability company organized and existing under the laws of Delaware.  None of IP Funding, LLC's members, sub-members, or sub-sub-members are citizens of the state of North Carolina.

2.      Robert Paul Morris ("Morris") is a resident of Wake County, North Carolina residing at 712 Latta Street, Raleigh, North Carolina, 27607, and is a citizen of North Carolina.

3.      This court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship, and the amount in controversy in this action is in excess of $75,000.00.

4.      This court has personal jurisdiction over Morris, and venue is proper in this district under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to these claims have occurred, and are occurring, in this district.

## FACTS

5.      Scenera is an independent research company focused on improving technologies in the wireless, communications, mobile, and media-sharing industries.

6.      Scenera employed a team of inventors hired to invent new technologies for the company and assist with obtaining patents on those inventions in favor of Scenera.  Scenera then licenses the patents on these inventions to third parties for revenue, and enforces its patent rights against third party infringers of these patents.

## MORRIS' EMPLOYMENT WITH SCENERA

7.      In January 2004, Scenera (then known as IPAC, LLC) hired Morris.  Morris' job duties were to invent new technologies for the company, to assist Scenera with preparing patent applications on those inventions, and to execute all necessary assignment documents demonstrating Scenera's ownership rights in those inventions.  Morris was hired by Scenera to invent and to devote his efforts to the particular task of inventing for Scenera.

8.      Prior to his employment with Scenera, between 1998 and 2003, Morris had been employed by FlashPoint Technology, Inc. ("FlashPoint").  At FlashPoint, Morris had been obligated to invent for the company and to assign all patents and inventions to FlashPoint.

9.      During his employment at FlashPoint, for example, Morris had executed an "Employment, Confidential Information, and Invention Assignment Agreement," pursuant to Morris contractually agreed that he would

> assign to the Company . . . all of [his] right, title and interest in and to any and all inventions, original works of authorship, developments, concepts, or improvements or trade secrets, whether not patentable or registrable under copyright or similar laws, which [Morris] may solely or jointly conceive or develop, or reduce to practice, or cause to be conceived or developed, or cause to be conceived or developed or reduced to practice, during the period of time [he was] in the employ of the Company.

10.     In late 2003, Morris was assigned to provide invention services to Scenera pursuant to a December 2003 Consulting Services Agreement between Scenera and FlashPoint.  Under the Consulting Services Agreement, Scenera would be deemed to be the owner of all work product (including inventions developed by Morris) that FlashPoint generated for Scenera pursuant to the Consulting Services Agreement.

11.     When he later commenced employment with Scenera in January 2004, Morris' duties were consistent with his previous responsibilities at FlashPoint.  Specifically, Morris'

US2008 971753.1

position at Scenera similarly obligated him to invent technologies for Scenera and to assign all patents and inventions to Scenera.

12.     When Morris commenced his employment with Scenera in January 2004, his annual salary was $109,000, plus benefits.

13.     After hiring Morris in January 2004, Scenera contracted with several independent contractors in 2004 to provide Scenera with invention services similar to those for which Morris had been hired (*i.e.*, to invent new technologies, to assist with the preparation of patent applications on those inventions, and to execute all necessary assignment documents to the company demonstrating Scenera's ownership rights in those inventions).  Ultimately, some of these contractors, and some additional employees, were hired by Scenera as full-time employees in Scenera's Research and Development Group.

14.     Morris was given the responsibility of leading and managing this group of inventors, in addition to performing his own duties as primary inventor for the company.  Morris was given the title of Vice President of Research and Development, and his annual salary was increased by $25,000—to $134,000—to reflect his added responsibility of staffing and managing Scenera's Research and Development Group.  Morris' primary responsibility, however, remained developing inventions for Scenera and assigning the patents in those inventions to Scenera.

15.     Morris was placed in a unique position of trust and confidence by Scenera. Specifically, as the primary inventor for Scenera, who was responsible for developing inventions for Scenera's benefit and assisting Scenera with filing patent applications and assignments recognizing Scenera's ownership of these inventions, Morris was uniquely positioned to influence the success of Scenera's overall business model—which derives in large part from its

patent licensing activities and its patent enforcement activities.  Morris' duties and responsibilities gave him a significant amount of control over Scenera's technical information and, ultimately, its ongoing patent licensing activities.

16.     Morris' position as an officer of Scenera Research LLC imposed on him a duty of undivided loyalty and good faith.  As Vice President of Research and Development for Scenera, Morris was obligated to act with due regard for the best interests of the company at all times.

17.     Both during his previous employment with FlashPoint and upon commencing his employment with Scenera in January 2004, Morris developed inventions for Scenera, assisted Scenera with preparing and filing patent applications on those inventions, and executed assignment documents granting ownership rights in those inventions to Scenera.

18.     Morris' first patent application on an invention he developed for Scenera was filed with the Patent and Trademark Office (PTO) in February 2004, approximately one month after he commenced his employment.  The invention in question had been conceived of by Morris in 2003, prior to being hired by Scenera, when he had been a FlashPoint employee.

19.     By March 2004, Morris had filed two more patent applications and had prepared eight invention disclosures on inventions he developed for the company.  During the remainder of 2004, approximately 30 patent applications were filed by Scenera for inventions that Morris developed for the company.  No other inventor under Morris' direction filed more than eight patent applications in 2004.

20.     For each patent on which Morris was listed as an inventor, Morris was obligated to execute a separate patent Assignment document in favor of Scenera, and willingly did so, recognizing Scenera's ownership rights in the invention pursuant to his obligations as an employee hired to invent.

US2008 971753.1

21.     Under the Assignment document, Morris agreed that he had assigned "the entire right, title and interest" to the specified invention to Scenera, as well as the "right to file patent applications on said invention" and "the entire right, title, and interest" in the patent on the invention.

22.     Morris further agreed in the Assignment document to "sign all papers and documents, take all lawful oaths, and do all acts necessary or required to be done for the procurement, maintenance, enforcement, and defense of Letters Patent or Patents for said inventions" in favor of Scenera.

## THE DISPUTE OVER PATENT BONUSES

23.     In addition to paying its inventors a base salary, beginning in 2004 Scenera began paying periodic patent bonuses to its inventors and researchers, including Morris, as an additional incentive for inventors to develop inventions for the company, to obtain patents on them in favor of Scenera, and to be encouraged to remain with the company on a long-term basis.

24.     An inventor would earn a $5,000 bonus at the time Scenera filed a patent application on an employee's invention with the PTO.  In addition, an inventor would earn a separate $5,000 bonus at the time a patent ultimately issued from the PTO.  Accordingly, an inventor who successfully developed an invention for Scenera and filed a patent with the PTO would earn two separate bonuses:  i) $5,000 at the time the patent application was filed; and ii) $5,000 at the time the patent issued.

25.     In all cases, an individual had to be an employee when a patent application was filed or a patent was issued in order to earn and be paid a bonus.

US2008 971753.1

26.     Scenera paid patent bonuses to its inventors during the years 2004, 2005, 2006, and 2007.

27.     During the years the patent bonus policy was in effect, Morris periodically earned separate bonus payments for inventions that became the subject of filed patent applications and issued patents.  In 2007, for example, Morris received approximately $165,000.00 in separate filing and issuance bonus payments for various inventions he developed for Scenera that became the subject of filed patent applications and issued patents. This sum was paid in addition to Morris' annual salary.

28.     In January 2008, Scenera terminated its policy of paying patent bonuses, due to the significant amount of "up front" bonuses that were being paid to inventors.  After that time, no Scenera employees were paid bonuses.

29.     Although the payment of patent bonuses ceased in January 2008, Morris continued to receive his annual base salary, plus benefits, throughout his employment with the company.  In consideration of this salary, Morris was obligated to continue, throughout 2008, to perform his job responsibilities as Vice President of Research and Development, including inventing technologies for Scenera; assisting Scenera with filing patent applications to cover his inventions; and executing assignments placing ownership of those patent applications and any issued patents with Scenera and/or its affiliates.

30.     In or around March 2009, Morris began to demand that Scenera pay him bonuses, totaling $210,000, for patent applications that had been filed and that had issued as patents between the period January 2008 and March 2009.

31.     Because its patent bonus policy had not been in effect during this time period, Scenera would not agree to pay Morris the requested bonuses.  Morris openly expressed

US2008 971753.1

frustration at Scenera's decision not to pay him the requested bonuses. Despite this dispute over bonus payments, however, Scenera continued to pay Morris an annual salary, which by that time was in excess of $200,000 a year, plus benefits.

## MORRIS BREACHES HIS FIDUCIARY AND CONTRACTUAL DUTIES

32.     Beginning at least in January 2009, unbeknownst to Scenera, Morris began attempting to communicate directly with existing patent licensees of Scenera and other parties, in an effort to enter into direct licenses with them. Specifically, Morris offered to directly license to these licensees and other parties certain undisclosed inventions and unassigned patent applications on inventions that Morris had developed during his employment with Scenera, in exchange for a license fee that would be payable directly to Morris.

33.     These communications were carried out without Scenera's knowledge, and in direct contravention of Morris' duty to act in the best interests of Scenera.

34.     In May 2009, Morris began stating to Scenera that he would not agree to execute any assignments or documents for certain other inventions that Morris disclosed to Scenera and for which Scenera had prepared or was preparing patent applications that Scenera intended to file with the PTO and on which Morris has been listed as an inventor.

35.     The inventions Morris failed to disclose to Scenera, and those described in patent applications prepared or being prepared by Scenera, had been conceived while Morris was employed by Scenera. Morris refused to disclose these concealed inventions and execute assignments for these unassigned patent applications despite the fact that his position with Scenera—for which he was being compensated with a generous annual salary—obligated him to execute assignments and other formal documents in favor of his employer, Scenera, and its affiliates.

US2008 971753.1

36.     In July 2009, Morris resigned his employment with Scenera.

37.     In the wake of Morris' resignation from the company, Morris has threatened Scenera's ownership interest in the patents on certain inventions Morris had developed during his employment, and has yet to disclose the inventions he conceived of and developed as an employee of Scenera but has intentionally concealed.

38.     Morris has refused to execute any further patent assignments on inventions that he developed during his employment and that were disclosed to Scenera.  Some of these inventions are the subject of patent applications Scenera is currently prosecuting before the PTO.  The inventions described in these unassigned patent applications were conceived while Morris was employed by Scenera.

39.      Morris has refused to cooperate with any of Scenera's ongoing efforts to enforce its patent rights through patent infringement actions against third parties, despite the fact that he is obligated to do so.

40.     These actions by Morris have caused, and will continue to cause, severe and irreparable damage to Scenera.

41.     Specifically, by challenging Scenera's ownership rights in the patents Morris conceived of during his employment, by concealing inventions, and by threatening to "rescind" assignments Morris had previously executed recognizing Scenera's ownership of these inventions, Morris has substantially impaired the value of Scenera's patent portfolio—an asset in which Scenera has made significant investments and from which Scenera derives significant revenues.

42.     By refusing to observe his obligations to disclose inventions conceived while an employee of Scenera and to execute patent assignments and other formal documents recognizing

US2008 971753.1

Scenera's ownership of inventions he conceived during his employment, Morris has prevented

Scenera from deriving any revenues from these inventions, either by licensing them to third

parties or by enforcing Scenera's patent rights against putative infringers.

43.     Moreover, by refusing to cooperate with Scenera's ongoing patent prosecution

efforts before the PTO, and by refusing to assist with pending patent infringement actions against

third parties, Morris has thwarted Scenera's ability to derive any income from a great many

patent applications and patents in its portfolio.

44.     Morris' actions have caused severe and irreparable monetary harm to Scenera in

excess of $75,000, including but not limited to: a loss of revenues in the form of licensing fees

and monetary damages from pending third party infringement actions; the incursion of

significant costs and expenses, including infrastructure expenses, costs and expenses in PTO

proceedings, and costs and expenses in pending patent infringement actions; and an overall

impairment in the monetary value of Scenera's patent portfolio.

## FIRST CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTY

45.     Scenera realleges and incorporates the allegations contained in the preceding

paragraphs as if fully set forth herein.

46.     Morris was employed as an officer of Scenera, and held the position of Vice

President of Research and Development until his resignation in July 2009.

47.     In his position as Vice President of Research and Development, Morris owed

Scenera Research LLC a fiduciary duty of undivided loyalty, good faith, and fair dealing.  Morris

was legally obligated to act with due regard for the best interests of the company at all times.

48.     Morris was placed in a unique position of trust and confidence by Scenera.

Specifically, as the primary inventor for Scenera, responsible for developing inventions for

Scenera's benefit and assisting Scenera with filing patent applications and assignments granting Scenera ownership in these inventions, Morris was uniquely positioned to influence the success of Scenera's overall business model—which is derived in large part from its patent licensing activities and its patent enforcement activities.

49.     Morris' duties and responsibilities at Scenera gave Morris a significant amount of control over Scenera's patents and technical information and its ongoing patent licensing activities.

50.     Despite the existence of these fiduciary duties, Morris has repeatedly breached his obligations of loyalty and good faith to the company for which he was employed as an officer, Scenera Research LLC.  Among other acts:

   i.      Morris has engaged in self-dealing by attempting to enter into direct licenses with existing patent licensees of Scenera and other parties (in order to obtain licensing income directly from these licensees on inventions he developed during his employment). Morris' acts of self-dealing were not disclosed to Scenera and were carried out without Scenera's consent;

   ii.     Morris has concealed from Scenera inventions that he developed during his employment;

   iii.    Morris has refused to sign patent assignment documents recognizing Scenera's ownership rights on certain inventions he developed during his employment, and has threatened to rescind any assignments of patents he previously assigned in favor of Scenera, his employer;

   iv.     Morris has refused, and continues to refuse, to cooperate in Scenera's ongoing patent prosecution efforts and patent infringement actions, thereby harming the value of Scenera's patent portfolio and its ongoing business operations.

51.     In engaging in these activities, Morris has acted in his own best interests rather than in the best interests of Scenera, in willful breach of his duties of loyalty, good faith, and fair dealing.

52.     These acts have caused Scenera severe and irreparable injury.  Scenera is entitled to monetary damages from Morris for his breach of fiduciary duty, in an amount in excess of $75,000 to be proven at trial.

### SECOND CLAIM FOR RELIEF
### BREACH OF ASSIGNMENTS

53.     Scenera realleges and incorporates the allegations contained in the preceding paragraphs as if fully set forth herein.

54.     Between 2004 and 2009, Morris entered into and executed binding, written Assignment agreements with Scenera for over 200 patent applications (hereinafter the "Assignments").

55.     Under the Assignments that he executed, Morris contractually agreed that he would "sign all papers and documents, take all lawful oaths, and do all acts necessary or required to be done for the procurement, maintenance, enforcement, and defense of Letters Patent or Patents for said inventions" in favor of Scenera.

56.     Despite these undertakings, Morris has breached, and is continuing to breach, his contractual obligations contained in the Assignments.  Specifically, both during his employment and subsequent to his termination, Morris has expressly stated that he will not "sign all papers" necessary to recognize Scenera's rights in the inventions he developed during his employment.

57.     In addition, Morris has refused, and continues to refuse, to "do all acts necessary" for the procurement and enforcement of patents on the inventions specified in the Assignments. Among other acts, Morris has indicated that he will not assist Scenera in its ongoing patent infringement actions against putative third party infringers, even as to those patents for which Morris executed binding Assignments.

US2008 971753.1

58.     Morris' acts as more fully alleged herein constitute willful and intentional breaches of the contractual obligations contained in the Assignments.

59.     Morris' breaches of the Assignments have caused Scenera severe and irreparable harm, pursuant to which Scenera is entitled to monetary damages in an amount in excess of $75,000 to be proven at trial.

WHEREFORE, Defendant-Counterclaimant Scenera respectfully prays that this Court:

i.      Award Scenera monetary damages as a result of the severe harm it has incurred due to Morris' breach of fiduciary duty and breaches of Assignments;

ii.     Award Scenera punitive damages as a result of Morris' conduct alleged herein;

iii.    Award Scenera its reasonable attorneys' fees and costs pursuant to N.C. Gen. Stat. § 95-25-22.

iv.     Dismiss all of the claims alleged in Morris' Complaint with prejudice;

v.      Award such other and further relief as this Court deems just and proper.

Respectfully submitted this the 17th day of November, 2009.

**KILPATRICK STOCKTON LLP**

 /s/ Hayden J. Silver, III
Hayden J. Silver III (NC State Bar 10037)
jaysilver@kilpatrickstockton.com
Jason Link (NC State Bar 25689)
jlink@kilpatrickstockton.com
John M. Moye (NC State Bar 35463)
jmoye@kilpatrickstockton.com
3737 Glenwood Avenue, Suite 400
Raleigh, NC  27612
Phone:  (919) 420-1700

*Attorneys for Scenera Research LLC
and Ryan C. Fry*

US2008 971753.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was filed with the Court using the CM/ECF system which will send notification of filing to the following parties:

COATS & BENNETT PLLC
Anthony J. Biller
abiller@coatsandbennett.com

YOUNG MOORE AND HENDERSON, P.A.
Walter E. Brock, Jr.
web@youngmoorelaw.com

This 17th day of November, 2009.

/s/  John M. Moye
_____

John M. Moye

KILPATRICK STOCKTON LLP
3737 Glenwood Avenue
Suite 400
Raleigh, NC 27612
`

US2008 971753.1